# EXHIBIT

# A





# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

FLIPPO CONSTRUCTION COMPANY, INC.
    Vs.
OMNI EXCAVATORS, INC. et al

C.A. No.    2014 CA 001110 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge LAURA A CORDERO
Date: February 25, 2014
Initial Conference: 9:30 am, Friday, June 13, 2014
Location: Courtroom A-50
      515 5th Street N.W.
      WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

<div align="right">Chief Judge Lee F. Satterfield</div>

<div align="right">Caio.doc</div>



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

FLIPPO CONSTRUCTION COMPANY, INC.
_____
                                    Plaintiff

vs.                                              Case Number **14 - 0 0 0 1 1 1 0**
_____

AEGIS SECURITY INSURANCE COMPANY
_____
Serve: CT Corporation System      Defendant
1015 15th Street NW, Ste. 1000
Washington, DC 20005              **SUMMONS**

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

M. Joseph Pierce / Rees Broome, PC                    *Clerk of the Court*
Name of Plaintiff's Attorney

1900 Gallows Rd., 7th Floor          By _Adrienne J. Marsh_
Address                                              Deputy Clerk
Tysons Corner, VA 22182

Phone: (703) 790-1911                Date _2|24|2014_
Telephone

如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

     IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

     If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### 500 Indiana Avenue, N.W., Suite 5000
### Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
                                    Demandante

        contra
                                                Número de Caso: _____

_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                *SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante
_____

                                    Por: _____
Dirección _____
                                                        Subsecretario

                                    Fecha _____
Teléfono _____

如需翻譯,請打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오        የትርጉም አገልግሎት ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRIA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

                                                                        CASUM.doc

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

RECEIVED
Civil Clerk's Office

FEB 2 4 2014

Superior Court of the
District of Columbia
Washington, D.C.

FLIPPO CONSTRUCTION COMPANY, INC.             *

  Plaintiff,                                                      *

               *

v.                                                                          *                  Case No. 14 - 0001110

               *

OMNI EXCAVATORS. INC.                                 *
2419 Benning Road, N.E                                   *
Washington, DC 20002                                     *

  Serve:  Alberto Gomez, Resident Agent       *
     1111 Good Hope Road, S.E.            *
     Washington, DC 20020                   *

               *

and                                                                         *

AEGIS SECURITY INSURANCE COMPANY        *

  Serve:  CT Corporation System                  *
     1015 15th Street NW                       *
     Suite 1000                                      *
     Washington, DC 20005                   *

  Defendants.                                                *

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

## COMPLAINT

  Plaintiff, Flippo Construction Company, Inc. states the following as its Complaint against

Omni Excavators, Inc. and Aegis Security Insurance Company:

### Parties

  1.  Plaintiff, Flippo Construction Company, Inc. ("Flippo") is a Maryland corporation

engaged in business as a construction contractor.

  2.  Defendant, Omni Excavators, Inc. ("Omni") is a corporation engaged in business

as a contractor performing site work and excavation.

1

3.     Defendant, Aegis Security Insurance Company ("Aegis") is a corporation authorized to issue surety bonds.

## Background

4.     Flippo was the general contractor for a project located in Washington D.C. known as Ft. Stanton Site Work and Joint Seals ("Project"). The District of Columbia Water and Sewer Authority ("DC Water") was the owner of the Project.

5.     In furtherance of its work on the Project, Flippo entered into a subcontract agreement with Omni dated January 18, 2010 whereby Omni agreed to perform various work including excavation, backfill, installation curb and gutter, installation and furnishing of stone roadway base and asphalt paving, installation of drainage systems, furnishing and installing micro pile thrust block, and related work ("Subcontract"). A copy of the Subcontract, excluding attachments other than the scope of work and terms and conditions, is attached as Exhibit 1.

6.     Pursuant to the terms of the Subcontract, Omni was required to furnish payment and performance bonds.

7.     To fulfill its obligations under the Subcontract, Omni, as principal, and Aegis, as surety, issued a Subcontractor Performance Bond dated March 10, 2010 ("Bond"). A copy of the Bond is attached as Exhibit 2.

## Omni's Failure to Perform

8.     Omni breached its Subcontract with Flippo in a variety of ways, including but not limited to the following:

a.     Omni failed to perform the work in accordance with the Project schedule.

b.     Omni failed to perform the work in accordance with the plans and specifications for the Project.

2

c. Omni failed to correct multiple noncompliance notices issued by DC Water with respect to its work.

d. Omni damaged work in place by failing to follow direction from Flippo and DC Water.

e. Omni failed to adequately staff the Project with qualified personnel.

f. Omni failed to provide required documentation including scheduling information and submittals in a timely fashion.

### Flippo's Termination of the Subcontract

9. Flippo repeatedly notified Omni of its failure to perform and demanded that it cure its defaults.

10. Despite these notices, Omni failed to cure its defaults under the Subcontract.

11. In response to Omni's failure, Flippo eventually terminated the Subcontract for default, by letter of March 29, 2013.

### COUNT I
### (Breach of Contract against Omni)

12. Paragraphs 1-11 are re-alleged as if set forth fully herein.

13. Omni breached the Subcontract by failing to perform its obligations thereunder and failing to cure its defaults.

14. As a result of Omni's breach of the Subcontract, Flippo was required to complete Omni's work by other means.

15. As a direct and proximate result of Omni's breach of the Subcontract, Flippo has been damaged in the amount of $198,922.42.

16. Additionally, pursuant to the terms of the Subcontract, Flippo is entitled to recover its reasonable attorney's fees incurred in this action.

3

17.     All conditions and conditions precedent to the maintenance of this action have been fulfilled except to the extent that the same may have been waived, prevented, or excused.

## COUNT II
### (Payment Bond Claim against Omni and Aegis)

18.     Paragraphs 1-17 are re-alleged as if set forth fully herein.

19.     Pursuant to the terms of the Bond, Omni and Aegis are responsible for payment of the reasonable completion costs incurred by Flippo in the performance of Omni's scope of work which are in excess of the remaining balance of the Subcontract price.

20.     The reasonable completion costs incurred by Flippo exceed the balance of the Subcontract price by $198,922.42.

21.     Pursuant to the terms of the Bond, Flippo is entitled to recover $198,922.42 from Omni and Aegis.

22.     In accordance with the terms of the Bond, this suit has been instituted less than two years from the date on which final payment under the Subcontract is due.

23.     All conditions and conditions precedent to the maintenance of this action have been fulfilled except to the extent the same may have been waived, prevented, or excused.

WHEREFORE Plaintiff, Flippo Construction Company, Inc., respectfully requests that this Court enter judgment in its favor against Defendants Omni Excavators, Inc. and Aegis Security Insurance Company jointly and severally in the amount of $198,922.42 plus pre-and post-judgment interest, court costs, and for reasonable attorney's fees against Omni Excavators, Inc. only, and for such other and further relief as the Court deems just and appropriate.

FLIPPO CONSTRUCTION COMPANY, INC.
By Counsel

4

M. Joseph Pierce  (#474749)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 288-9410
Email:  jpierce@reesbroome.com
*Counsel for Flippo Construction Company, Inc.*

K:\90\90208\00173\PLDNGS\140220 complaint.docx

# EXHIBIT 1

FCCI Job No.: 1030
FCCI Subcontract No.: 01
Omni Excavators

## SUBCONTRACT

THIS AGREEMENT, made this 18th day of January 2010, by and between (I)  FLIPPO CONSTRUCTION COMPANY, INC. (hereinafter called "Contractor"), a corporation organized and existing under the laws of the District of Columbia and (II) OMNI EXCAVATORS, INC. (hereinafter called "Subcontractor")  (Mailing Address) 4103 48TH STREET BLADENSBURG ,MD 20710,  a Corporation organized and existing under the laws of the State of Maryland .

WHEREAS, Contractor and   DC WASA  (hereinafter referred to as "Owner") have entered into a contract (hereinafter called the "Prime Contract") dated the 14th of December   , 2009, Contract Number 90120, for the construction of Fort Stanton Sitework and Joint Seals; and

WHEREAS, Contractor and Subcontractor desire to enter into this Agreement whereby Subcontractor shall perform (I) certain items or portions of the work specified in the Prime Contract and (II) all of Contractor's obligations under the Prime Contract with respect to such work.

NOW, THEREFORE, in our consideration of the mutual agreements herein contained, Contractor and Subcontractor agree as follows:

**Section 1  Work and Price.**  Subcontractor shall perform the following described work in accordance with the Contract Plans, Specifications, Contract Special Provisions and referenced documents and receive payment for such work as specified, both subject to the terms of this Agreement.  Subcontractor shall submit invoices no later than two work days after the 23rd of each month to allow Contractor to include Subcontractor's work covered by that invoice in the next application for payment which the Contractor is entitled to submit.

**Description of Work and Price:**
The Subcontractor agrees to furnish all materials, labor, equipment, tools and all incidentals required to install and complete the specified work listed below to the extent that the Contractor is obligated so to do all in accordance with the contract documents, specifically, but not limited to,

** See Attachment "A" for Description of Work and Price Continued:

** Approximate Total from Attachment "A" = $   379,083.90

** All quantities from Attachment "A" are approximate, actual pay quantities to be field measured and mutually agreed upon by FCCI and Subcontractor.

** Included in the Subcontractor's price is a performance and payment bond to be issued before payment for contract work will be made.

-1-

FCCI Job No.: 1030
FCCI Subcontract No.: 01
Omni Excavators
Section 2 General Provisions. Articles 1 through 31, General
Provisions of this Agreement, are attached hereto on Pages 3, 4 and
5 and are made a part hereof.

**Section 3 Additional Provisions.**

A.   Flippo, in conjunction with the Subcontractor and the Owner,
will strive to construct this project safely.  In order to
assure this, the Subcontractor will provide all safety
equipment necessary for his/her employees to comply with all
contract and Flippo safety requirements.  The Subcontractor
must identify, in writing, their Jobsite Safety
Representative (JSR) and an alternate when this contract is
executed, but in no case later than the start of the
Subcontractor's work.  If the JSR or the alternate is
changed, Flippo must be notified in writing prior to work
continuing.

B.   This project contains a project completion date with
liquidated damages for delays to the completion of the
project.  In order to properly monitor and coordinate the
work the Subcontractor will furnish all required information
relating to his/her work to enable Flippo to establish an
initial acceptable CPM schedule and to monitor the
Subcontractor's progress during the course of the project.
A copy of the Owner approved schedule will be furnished
to the Subcontractor upon request by the Subcontractor.

This Section is continued on page __2a__ through __2b__
consecutively, a total of __2__ additional pages.

IN WITNESS WHEREOF, the parties hereto have executed this
Agreement as of the day and year first above written.

CONTRACTOR:

FLIPPO CONSTRUCTION COMPANY, INC.

WITNESS:

_Cynthia A. Russell_                  BY _____ (SEAL)
Cynthia A. Russell                       Brian E. Flippo
                                         Executive Vice President
                                         TITLE

SUBCONTRACTOR:

WITNESS:                              OMNI EXCAVATORS, INC.

_____                       BY _____ (SEAL)

                                      (Typed Name) _Rob Rafi_
                                      _Vice President_
                                      TITLE

- 2 -

FCCI Job No.: 1030
FCCI Subcontract No.: 01
Omni Excavators
Section 3   Additional Provisions Continued.

C.   Flippo will furnish to the Subcontractor a standard daily reporting document.
The Subcontractor will fill out and sign a report for each day that work is
performed on the project. This report will be submitted to Flippo's field
supervisor no later than the close of business the next workday. Accurate and
timely submittal of this document will be required by the Subcontractor to
assure compliance with the contract and later verification of payment requests.

D.   Submittals of pertinent shop drawings, source of supply, design information,
material certification, materials safety data sheets, methods of installation, and
product literature shall be in accordance with contract documents.
Subcontractor shall call to FCCI's attention, in writing, any deviations that
submittals and shop drawings may have from the requirements of contract
documents. The Subcontractor will ensure that the submittal and/or
fabrication process is completed so that the work may begin on schedule. It is
understood and agreed that the referenced project schedule is not a guarantee
that the Subcontractor's work will be available at the time specified. The
schedule may have to be revised by the Owner or Flippo as circumstances
require.

E.   Flippo will provide maintenance of traffic in accordance with the approved
traffic control plan. However, any additional protection of traffic, pedestrian
and/or vehicular, specific to the Subcontractor's work will be the
responsibility of the Subcontractor. Any changes will be coordinated through
Flippo, with reasonable notice given to Flippo, and these changes submitted
by the Subcontractor for approval, if required by the contract.

F.   This contract has a minimum wage rate for all labor categories. The
Subcontractor must comply with these rates for the appropriate categories.

G.   This contract requires the submittal of certified payrolls. The Subcontractor
will submit three (3) copies of the certified payrolls to Flippo Construction
Company, Inc. as required by the contract documents. Timely submittal, in
accordance with the contract, of these documents shall be the Subcontractor's
responsibility. Flippo may withhold any payment until all certified payrolls
are received.

H.   All deliveries and/or the start of the Subcontractor's work must be coordinated
with the Flippo field supervisor at least 48 hours in advance.

I.   The Subcontractor shall attend all regular progress/scheduling/coordination
meetings as may be requested by Flippo.

J.   The Subcontractor shall dispose of all wastes associated with his/her work in
accordance with the contract requirements.

K.   The Subcontractor will be responsible for all temporary construction utilities
including, but not limited to, air, water, and electricity if required for their
operation.

- 2a -

FCCI Job No.: 1030
FCCI Subcontract No.: 01
Omni Excavators

L.   All quantities are approximate.  Quantities may be revised by the Contractor, in its sole discretion, as circumstances may require.  No price escalation is allowed.

M.   Subcontractor shall, in a timely manner, submit to Flippo after the execution of this contract, a listing of all vendors and subcontractors utilized on this project.

N.   Subcontractor shall do all cutting, fitting, patching and coordination necessary to interface or install work with that of other trades.

FCCI Job No.: 1030
FCCI Subcontract No.: 01
Omni Excavators

ATTACHMENT "A"

Description of Work and Price Continued:
Furnish Labor, materials, equipment and supervision necessary for
the items included in this scope of work per WASA contract 090120,
Special Provisions, Addendums, Contract Drawings and Specification
Sections. These contract documents and Federal Provisions are hereby
incorporated into this contract.

The following work is specifically included and shall be paid per
the unit prices or lump sum amounts:

| Item | Contract Item | Description | Quantity | UM | Unit Price | Extended Price |
|------|---------------|-------------|----------|----|-----------|--------------|
| 1 | 2-4010 | Furnish and Install work associated with the Micropile Thrust Block as shown and described on Drawing S-3 and special provisions | 1 | LS | $100,323.00 | $100,323.00 |
| 2 | 2-6050 | Install Drainage Systems and All Other Work Not Included in Bid Items 3 through 5 and 7 throuh 12 | 1 | LS | $104,489.72 | $104,489.72 |
| 3 | 2-7020 | Excavation per Section 02224 | 2500 | CY | $34.00 | $85,000.00 |
| 4 | 2-8010 | Backfill per Section 02224 | 3000 | CY | $22.00 | $66,000.00 |
| 5 | 2-9100 | Furnish and Install Curb & Gutter per Section 02500 | 250 | LF | $26.00 | $6,500.00 |
| 6 | 2-9110 | Furnish and Install Gravel Roadway Base per Section 02500 | 300 | SY | $ 10.50 | $3,150.00 |
| 7 | 2-9130 | Furnish and Install Asphalt Surface (2 inch) per Section 02500 | 300 | SY | $12.60 | $3,780.00 |
| 8 | 915 | Payment and Performance Bond | 1 | LS | $9841.18 | $9841.18 |

APPROXIMATE TOTAL = $   379,083.90

** Above Price Includes, But is Not Limited To:
  1. All work as shown on Contract Drawings.
      a. Clear, Grub & Install Silt Fence
      b. Install Access Road
      c. Excavation of Working Bench and Thrust Block
      d. Install Micropile
      e. Form/Pour/Strip Thrust Block
  2. Drainage Systems and All Other Work Not Included In Bid Items 3
      through 5 and 7 through 12
      a. Replace existing manhole
      b. Replace Valve Casing
      c. 6" Underdrain
      d. 8" Underdrain
      e. Drainage Manholes
      f. 16" PVC Drain Line
      g. 16" Field Connection
      h. 8" PVC Drain Line
      i. 12" PVC Drain Line, including Tie-in to Ex. Outlet
      j. Remove Existing Manhole and Drain Line
  3. All items will be performed in accordance with their respective
      specification sections.

** Clarifications

  1. Maintenance of Traffic and layout to be provided by FCCI
  2. Omni will install and maintain the appropriate erosion and
      sedimentation controls in accordance with the contract
      documents, for their portion of the work.

FCCI Job No.: 1030
FCCI Subcontract No.: 01
Omni Excavators

3. FCCI will furnish the following materials through WBE supplier Construction Source One:

   a. Precast Structures: EXMH, EXVN, M1, M2, M3, M4 as quoted by Americast and submitted by Omni. Total cost shall not exceed $15,018.76.

   b. PVC Pipe:

| | | | |
|---|---|---|---|
| i. | 6" PVC x CI adaptor | 2 | EA |
| ii. | 6" Sch 40 BE Pipe | 400 | LF |
| iii. | 6" DWV HxH 45 | 1 | EA |
| iv. | 6" Sch 40 Cap | 1 | EA |
| v. | 3" PVC x CI adaptor | 2 | EA |
| vi. | 3" Sch 40 BE Pipe | 500 | LF |
| vii. | 3" DWV HxH 45 | 1 | EA |
| viii. | 3" Sch 40 Cap | 1 | EA |
| ix. | PVC Purple Primer | 1 | QT |
| x. | PVC Cement | 1 | QT |
| xi. | 16" DR 21 Yelomine Pipe | 60 | LF |
| xii. | 12" DR 21 Yelomine Pipe | 60 | LF |
| xiii. | 8" DR 21 Yelomine Pipe | 40 | LF |
| xiv. | DR 21 Drop Charge | 1 | LS |
| xv. | 8" SDR-35 | 182 | LF |
| xvi. | 8" SDR-35 GxG 45 | 1 | EA |
| xvii. | 8" x 6" SDR-35 GxG Wye | 2 | EA |
| xviii. | 8" SDR-35 Plug | 2 | EA |
| xix. | 6" SDR-35 GxG 45 | 2 | EA |
| xx. | 6" SDR-35 | 84 | LF |
| xxi. | 6" SDR-35 Perforated | 98 | LF |
| xxii. | 6" Sidewalk Cleanout | 4 | EA |
| xxiii. | 6" SDR-35 GxG Wye | 2 | EA |
| xxiv. | 6" SDR-35 GxS 45 | 2 | EA |
| xxv. | 6" SDR-35 Plug | 2 | EA |
| xxvi. | 12" Surelock Solid | 100 | LF |
| xxvii. | 6" Surelock Solid | 100 | LF |
| xxviii. | 18" Fernco: Concrete x PVC | 1 | EA |

as quoted by Water Works and submitted by Omni. Total cost shall not exceed $25,787.52.

All other materials not specified above required for this work, both permanent and incidental, are the responsibility of Omni Excavators.

INITIALS
CONTRACTOR ____
SUBCONTRACTOR ____

# ATTACHMENT UNDER SECTION 2
# GENERAL PROVISIONS

Article 1 Prime Contract. The term "Prime Contract" as used herein refers to all the general and special provisions, conditions, drawings, specifications, addenda, amendments, modifications and all other documents and things forming, or by reference made a part of, the contract between Contractor and Owner. All of the aforesaid shall be considered a part of this Agreement by reference thereto and any reference or inclusion herein of specific provisions of the Prime Contract is for the purpose of emphasis or convenience in describing Subcontractor's obligations, or to comply with particular terms of applicable laws, regulations or the Prime Contract which require such reference or inclusion. Any such reference or inclusion shall not be deemed to limit Subcontractor's obligation to perform the Work as provided for herein. Subcontractor agrees to be bound to Contractor in the same way Contractor is bound to Owner by the terms and provisions of the Prime Contract, except that any provision contained in this Agreement shall govern over any inconsistent provision contained in the Prime Contract. The requirements of the Prime Contract are herein sometimes called the "Project". Subcontractor acknowledges that prior to execution of the Agreement, Subcontractor has examined the Prime Contract and has ascertained the obligations of the Prime Contract as they apply to this Agreement. Any failure by Subcontractor to so independently investigate and become fully informed will not relieve Subcontractor from Subcontractor's obligations hereunder.

Article 2 Owner. The term "Owner" as used herein refers to the party so designated on Page 1 of this Agreement and to all persons appointed or employed by such party to administer the Prime Contract on the Owner's behalf.

Article 3 Scope of Work. Subcontractor agrees to perform, furnish and pay for everything necessary for the proper and efficient execution and completion of the work described in Section 1 of this Agreement, including any and all items pertaining or incident thereto, in full compliance with the terms of the Agreement and the Prime Contract, including, but not limited to, all materials, supervision, shop drawings, as built drawings, labor, equipment, working drawings, permits, supplies, traffic plans, temporary facilities, warranties, inspections, guaranties and clean-up. Subcontractor shall keep a competent superintendent acceptable to Contractor on the Project site at all times during the progress of the Work, such superintendent to be the authorized representative of Subcontractor. The foregoing is herein sometimes called the "Work".

Article 4 Insurance. Subcontractor shall be responsible for, or will maintain Worker's Compensation and Employer's Liability Insurance, Comprehensive or Commercial General Liability, Comprehensive Automobile Liability, and Umbrella Liability as indicated in Articles 4(A), (B), (C), (D), or per Prime Contract (whichever is higher) and maintain property, installation, equipment and other insurance necessary to protect its interests, and/or any other limits of coverage from time to time be specified by Flippo Construction Company, Inc..

Such insurance policies shall provide that they shall not be amended, canceled or non-renewal without thirty (30) days prior written notice to Contractor. Subcontractor shall bear all risks of loss, destruction or damage to the Work (whether or not erected in place) from fire, storm, flood, vandalism, theft, sabotage and all other causes until Owner's final acceptance of the Project, prior to in-place acceptance.

No work shall be performed or payments made under this Agreement until Flippo Construction Company, Inc. has received appropriate certificate(s) of insurance from SUBCONTRACTOR evidencing the coverage required hereunder and naming Flippo Construction Company, Inc. and OWNER as additional insured. The fact that the SUBCONTRACTOR has obtained the insurance coverage required by this Agreement shall in no manner whatsoever relieve the SUBCONTRACTOR of any of its obligations or responsibilities set forth herein, or release SUBCONTRACTOR from any liability in excess of the minimum coverage required hereby.

The following insurance will be primary and non-contributory over any other valid and collectible insurance.

A. Worker's Compensation and Employer's Liability Insurance.
Subcontractor shall procure and maintain Worker's Compensation and Employer's Liability Insurance covering all of its employees in conformance with the laws of the state in which the work under the Contract Documents is to be performed, except that such insurance shall not have a limit of liability less than the following.

| | |
|---|---|
| Employer's Liability | $500,000 per Accident. |

B. Comprehensive or Commercial General Liability.
Subcontractor shall procure and maintain coverage to include all operations of the insured under the Contract Documents and coverage for all liability assumed hereunder with the following limits and extensions of coverage. Coverage to be on Occurrence Form. Claims Made form is not acceptable. Coverage to include: Premises Operations (including X-Explosion, C-Collapse, and U-Underground coverage as applicable); Independent Contractor's Protective, Personal Injury Liability with Employee Exclusion deleted; Contractual, including specified provisions for Contractor's obligation; Broad Form Property Damage: Including Completed Operations with the following limits:

| Bodily Injury and Property Damage: | |
|---|---|
| Each Occurrance | $2,000,000 |
| General Aggregate | $2,000,000 |
| Personal Injury Liability | $2,000,000 |

Products and Completed Operations Insurance Aggregate Limit of $2,000,000 shall be maintained for 2 (two) years after final payment and Subcontractor shall continue to provide evidence of such coverage to Owner and Flippo Construction Company, Inc. on an annual basis during the aforementioned period. Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured until expiration of the statute of repose after completion of the work.

The Commercial General Liability Policy's General Aggregate shall not be less than $2,000,000 and the limits shall apply on a Per Project basis.

C. Comprehensive Automobile Liability.
Subcontractor shall procure and maintain Comprehensive Automobile Liability Insurance covering owned, non-owned and hired motor vehicles with the following combined single limits:

| Bodily Injury and Property Damage: | |
|---|---|
| Each Occurrence | $2,000,000 CSL |

D. Umbrella Liability.
Subcontractor shall procure and maintain an Umbrella Liability policy with limits of: $5,000,000.

Article 5 Indemnification. Subcontractor covenants and agrees to indemnify Contractor and hold it wholly and completely harmless, absolutely and forever, from and against any and all claims, actions, liabilities, damages, suits, obligations, settlement costs, charges, attorneys' fees and other costs and expenses of any kind which Contractor may incur, by reason of or pertaining in any manner to Subcontractor's performance, actions, neglect or failure of performance in whole or in part arising under or in any way relating to this Agreement or any failure of Subcontractor to comply with any of the terms of this Agreement or any of Subcontractor's covenants or agreements set forth herein or of any act or omission of any of Subcontractor's employees or agents, or from any use or infringement of patents. Subcontractor agrees that, in addition to the retention provided in Article 9 herein, Contractor may retain from monies otherwise owing by it to Subcontractor, sufficient sums to protect and indemnify it against all such claims, losses and liabilities. Should Contractor so request, Subcontractor shall post such bonds or other securities as are required by Contractor in lieu of the retention of such monies. To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants and agents and employees of any of them from and against all injuries, claims, damages, losses and expenses, including but not limited to attorney's fees, arising directly or indirectly out of the obligations herein undertaken or resulting out of operations conducted by the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, unless such personal injury or property damage is solely due to the acts, omissions or negligence of Contractor, the Owner any Architect or Engineer for the project, or any third party, indemnified hereunder, save and except claims or litigation caused by or resulting from the sole negligence of the party indemnified hereunder. To the fullest extent permitted by law, the Subcontractor agrees to assume the defense of the Owner, the Contractor, the Architect, the Architect's consultants, and the agents and employees of any of them in, in any claim, proceeding, lawsuit, and or litigation arising out of any accident, incident, or occurrence that is caused by, connected with, arising out of, or resulting from the performance of the Subcontractor's work under this contract. The sl the Owner, Contractor, Architect, Architect's consultants, and/or the agents and employees of any of them, even if the subcontractor disputes its obligation to indemnify and hold harmless. The party being defended shall have the right to choose its own counsel. The Subcontractor agrees to pay for defense of the Owner, Contractor, Architect, Architect's consultants, and the agents and employees of any of them, with counsel chosen by the party to be defended, upon demand, in addition, to the foregoing indemnification. Subcontractor agrees to indemnify, defend, and hold harmless Contractor from any and all claims for personal injury and/or property damage arising, in whole or in part, out of or relating to subcontractor's performance of work on this project, regardless of whether such personal injury or property damage is due, in whole or in part, to the acts, omissions or negligence of contractor, the owner, any architect or engineer for the project, or any third party. Regardless of any insurance coverage pursuant to Article 4 above, contractor reserves the right to settle or compromise any claim for personal injury or property damage which is asserted against contractor arising out of subcontractor's work, and withhold such amounts from any funds due or to become due to subcontractor. Subcontractor waives all rights against Contractor, Owner, and Architect and their agents, officers, directors and employees for the recovery of damages to the extent these damages are covered by commercial general liability, commercial umbrella liability, business auto liability or workers compensation and employers liability insurance maintained per requirements stated above.

Article 6 Bonds. Within fourteen (14) days from the date of this Agreement and as a condition precedent to the first progress payment, Subcontractor shall furnish Contractor with a performance and payment bond in an amount at least equal to the total amount payable to Subcontractor pursuant to the terms of this Agreement. Such bonds shall be on a form commonly used and with a surety satisfactory to Contractor.

Article 7 Prosecution of the Work.

A. Time is of the essence as to the performance of the Work. Subcontractor shall monitor the progress of the Project and shall prosecute the Work in a prompt and diligent manner whenever such Work, or any part of it, becomes available, or within seven (7) calendar days after notice from Contractor, as Contractor may direct, so as to promote the general progress of the Project. Subcontractor shall perform and complete Subcontractor's Work within the time or times determined under this Agreement and everything furnished by Subcontractor shall be furnished in sufficient time, quality and quantity in order to accomplish same. Subcontractor shall maintain a sufficient number of qualified workers to perform the Work. Subcontractor shall coordinate Subcontractor's activities with Contractor and shall cooperate with Contractor and other subcontractors and shall not, by delay or otherwise, interfere with or hinder the work of Contractor or any other subcontractor.

B. Subcontractor shall furnish any information which Contractor may reasonably request with regard to the performance of the Work, including, but not limited to, method of performance, activity durations and performance restrictions. All such information shall be subject to acceptance by Contractor which shall determine its reasonableness with regard to the Project. Should Contractor judge such information unacceptable, Subcontractor shall be required to negotiate in good faith with Contractor and adjust such information until Contractor determines such information to be acceptable. Once such information is accepted by Contractor, Subcontractor shall be obligated to perform Subcontractor's Work in accordance with such information.

Article 8 Work Schedules. Should Contractor provide Subcontractor with progress schedules or any kind of time analysis for the performance of the work, it is understood and agreed that said schedules are offered as an aid to the construction process only. However, it is further understood and agreed that such schedules are not guarantees that Subcontractor's work will be performed within the time periods or durations or in the sequence set forth therein, and such schedules may accordingly be changed or revised by Contractor, in its sole discretion, from time to time as circumstances may require. Such schedules, if any, do not relieve Subcontractor of the obligation, as set forth herein, to follow the progress of the work and the directions of Contractor. Nothing herein shall be construed as requiring Contractor, either expressly or impliedly, to furnish Subcontractor with progress schedules for Subcontractor's work.

Article 9 Payment.
A. The terms of the Prime Contract insofar as they apply to progress payments, final settlements and measurements of the Work shall apply as between Contractor and Subcontractor, except as herein modified.

B. In consideration of Subcontractor's satisfactory performance of the Work in accordance with the terms of this Agreement, Contractor shall pay to Subcontractor, from the funds actually received from Owner and attributable to the Work performed by Subcontractor, the amounts computed on the basis of the prices set forth in Section 1 of this Agreement, as amended by change orders as herein provided, less previous payments to Subcontractor. Subcontractor shall be paid within ten (10) calendar days of receipt by Contractor of amounts due from Owner on account of Subcontractor's performance of any part of the Work. Contractor's receipt of any payment from Owner (including final payment and retention) is a condition precedent to the corresponding payment by Contractor to Subcontractor, and Subcontractor agrees to accept the risk of late payment by Owner. Contractor shall withhold retention from Subcontractor's payments in accordance with the terms of the Prime Contract. If Owner should reduce the retained percentage withheld from Contractor, Contractor shall, provided Subcontractor's Work is fifty percent (50%) complete and Subcontractor's performance is satisfactory to Contractor, reduce the retained percentage withheld from Subcontractor. No payment shall be deemed as an approval or acceptance of Work or as an acknowledgement that Subcontractor has completed the Work or any portion thereof. Prior to final payment, a proper adjustment and settlement of progress payments and other accounts shall be made. No payment shall be required to be made which will reduce the balance to be paid under this Agreement below a sum which will be adequate to fully cover the cost of completion of the Work and possible corrective work.

C. Subcontractor shall make application for payment as provided by Contractor and, upon Contractor's request, Subcontractor shall furnish a price breakdown acceptable to Contractor to be used for progress payment purposes.

D. Should Contractor perform any work or incur any cost that is Subcontractor's responsibility under this Agreement, Contractor shall be entitled to recover from Subcontractor, following notice of backcharge to Subcontractor, such expense and cost plus overhead and other sums, and ten percent (10%) profit. Should any such charges remain unpaid thirty (30) days after notice is given to Subcontractor and Subcontractor has not disputed such charge, such charge shall be deemed accepted by Subcontractor and may be deducted by Contractor from any amounts due Subcontractor.

E. The acceptance by Subcontractor of the final payment pursuant to the terms of this Agreement shall constitute a complete and unconditional release of Contractor from any and all existing or future claims or demands by Subcontractor against Contractor arising under this Agreement.

F. It is understood and agreed that the following are conditions precedent to any and all payments to Subcontractor:

1. Payment, including final payment, being received by Contractor from Owner; and
2. Receipt by Contractor from Subcontractor of satisfactory evidence of all persons supplying labor or material have been paid in full and have provided partial or complete release of all liens and claims and
3. The delivery of all applicable guarantees, warranties, bonds, manuals, as-built drawings, charts, tags and similar items required with respect to Subcontractor's work; and
4. A complete release and waiver of all liens and claims by Subcontractor for through the date of payment; and
5. Up-to-date certificates for all insurance coverage required under this Subcontract or the Prime Contract; and
6. In the case of final payment, in-place acceptance of the work by owner

Article 10 Failure to Perform.
A. All work shall be subject to inspection by Contractor and Owner in accordance with the Prime Contract.

B. In the event that Subcontractor fails to comply for any reason with the

provisions hereof as to character or time of performance, and such failure is not corrected within five (5) calendar days after written notice by Contractor to Subcontractor of such failure, or Subcontractor repeatedly fails to comply with the provisions of this Agreement, Contractor may without prejudice to any other right or remedy, terminate Subcontractor's right to proceed with the Work and take over and complete the Work by subcontract or otherwise at the expense of Subcontractor, or, without taking over the Work, may furnish the necessary materials and/or employ the workmen necessary to remedy the situation at the expense of Subcontractor. Should Contractor take over the Work pursuant to the terms of this paragraph 10B, it is specifically agreed that Contractor may take possession of the premises and of all materials, tools and equipment of Subcontractor at the construction site for the purpose of completing the Work. In addition, at Contractor's sole election, Subcontractor shall assign to Contractor upon termination any agreements which Subcontractor may have with any suppliers, sub-subcontractors or others pertaining to the work.

C. Subcontractor agrees to reimburse Contractor for any and all liquidated or actual damages that may be assessed against Contractor which are related to, arise out of, or are caused by, Subcontractor's failure to perform the Work within the time fixed or in the manner provided for herein, and in addition thereto, Subcontractor agrees to pay to Contractor such other or additional damages as Contractor may sustain by reason of such failure by Subcontractor, including but not limited to, extended field and home office overhead costs and any attorney fees incurred by Contractor, including attorney fees incurred in enforcing this Agreement. Any payment pursuant to the terms of this paragraph 10C shall not act as a release of Subcontractor from Subcontractor's obligations under this Agreement.

D. Should Subcontractor fail to perform any portion of the Work which, in the sole opinion of Contractor, is necessary to the immediate continuation of the Project, then, and in such event, and notwithstanding the notice requirements contained in paragraph 10B or as otherwise provided for herein, Contractor may, at its sole option, perform such portion of Subcontractor's Work with its own forces, or others, and Subcontractor shall be liable for the costs thereof.

E. If Subcontractor shall be insolvent or if a petition in bankruptcy shall be filed by or against Subcontractor, or if Subcontractor shall make an assignment for the benefit of Subcontractor's creditors, or if a majority interest in Subcontractor shall be sold to any third party, or if Contractor shall receive notice of a tax lien relating to Subcontractor in any manner, or if Subcontractor shall become physically disabled, Contractor shall, at its sole option, have the right, by notice to Subcontractor, to terminate Subcontractor's right to proceed with the work or to terminate this Agreement.

Article 11 Owner Termination. Contractor shall have the right to terminate Subcontractor's right to proceed with the Work or to terminate this Agreement should the Prime Contract or Contractor's right to proceed under the Prime Contract be terminated by Owner for any reason. Should the Prime Contract provide for termination of the Prime Contract and negotiation or settlement of the costs associated therewith, then, and in that event, Subcontractor shall be entitled to recover, subject to the provisions of Article 9, such termination costs as shall be determined under any procedure contained in the Prime Contract for the determination of such costs. In the event that the Prime Contract is terminated for default, and Contractor contests such default, the Subcontractor shall be paid under this Subcontract to the full extend of payments received for Subcontractor's work from Owner prior to the termination, or which may actually be received thereafter from Owner. No further amounts shall be due to Subcontractor until such time as Contractor completes all dispute procedures available under the Prime Contract. Upon the conclusion of such dispute procedures, Contractor shall pay to Subcontractor its portion of the amounts, if any, obtained from the Owner in such dispute proceeding. In the event that it is determined that the Owner's default termination of Contractor was proper, and such default termination was not the fault or responsibility of Subcontractor, in whole or in part, then within thirty (30) days of the date of such final determination, Contractor shall pay to Subcontractor the pro-rata value of its subcontract actually completed as of the date of termination, or Subcontractor's actual costs plus ten (10) percent, whichever is less. Subcontractor shall in no event be entitled to anticipated profits on unperformed portions of the work unless such anticipated profits shall be paid by Owner.

Article 12 Delays. Should Subcontractor's performance of this Agreement be directly delayed, hindered or disrupted by Contractor, other subcontractors or Contractor's suppliers, or by any acts or causes under the Prime Contract for which Owner grants Contractor an extension of time, and Subcontractor notifies Contractor of such delay, hindrance or disruption as provided in this Article 12, Subcontractor shall receive an extension of time for the performance of Subcontractor's obligations under this Agreement. In the case of any delay, hindrance or disruption caused by Contractor, other subcontractors or Contractor's suppliers, such extension of time shall not exceed the number of days of such delay, hindrance or disruption. Such time extension shall be Subcontractor's sole and exclusive remedy, and Subcontractor shall not be entitled to any costs or damages for delay, suspension or disruption of work. In the case of any delay, hindrance or disruption caused by the Owner to Contractor. Nothing in this Article 12 shall be construed to entitle Subcontractor to any increase in price or to direct or indirect damages or additional compensation of any kind as a consequence of such delays, hindrances or disruptions. Contractor shall pay Subcontractor the amount paid by Owner on behalf of Subcontractor for the delay, hindrance or disruption which directly affected Subcontractor. Within five (5) calendar days after the commencement of any delay caused by Contractor, other subcontractors, or Contractor's suppliers, Subcontractor shall provide Contractor with written notice, stating full details of the cause of such delay. Subcontractor shall notify Contractor in writing, in accordance with the provisions of Article 14, of any delays for which Owner is responsible.

Article 13 Changes.

A. Changes ordered by Owner in accordance with the terms of the Prime Contract shall be passed through to Subcontractor without notice to Subcontractor's sureties, whereupon Subcontractor shall promptly proceed with the performance of the Work as so changed in accordance with the terms of the Prime Contract. Subcontractor shall be paid for such changes in accordance with the terms of the Prime Contract and the terms of the Agreement.

B. Contractor may, by written notice to Subcontractor designated "Change Order", make changes in, additions to and deletions from, in whole or in part, the work or the manner or method of performance of the Work without notice to Subcontractor's sureties, whereupon Subcontractor shall promptly proceed with the performance of the Work as so changed. Any request by Subcontractor to adjust this Agreement as a result of such changes must be made in writing within ten (10) days from the date such changes are ordered. Any Change Order which increases or decreases the cost of, or time required for, performance of the Work hereunder shall increase or decrease the price or time for performance hereunder (as the case may be) on a fair and equitable basis. Any adjustment resulting from such changes shall be agreed upon in writing by the parties hereto. Failure of Subcontractor to file a request for adjustment or failure of the parties to agree upon any adjustment shall not delay the Work. In computing the adjustment due to Subcontractor, overhead and profit shall be limited to a total of fifteen (15) percent, which amount shall include the cost of all supervision, management, small tools, field overhead, and home office costs.

Article 14 Claims and Disputes.

A. Subject to the provisions of this Article 14, Subcontractor shall be entitled to the benefits and remedies of the Prime Contract for the acts or omissions of Owner that affect Subcontractor and Subcontractor shall bear all costs and have full responsibility in the exercise of those rights, including, without limitation, the preparation and justification of any claim for money or time in the manner and within the time limits prescribed by the Prime Contract. Subcontractor shall deliver to Contractor any notice required by the Prime Contract within half the time allowed by the Prime Contract. Any claim by Subcontractor for the acts or omissions of Owner not disposed of by agreement, or any other dispute involving the owner, shall be resolved in accordance with the procedures for resolving same in the Prime Contract. Subcontractor agrees to be bound by the procedures for final determinations under the Prime Contract and agrees that Subcontractor will not take, or will suspend, any other action or actions with respect to any such claims or disputes and will pursue no independent litigation with respect thereto, pending final determination of such claims or disputes under the provisions of the Prime Contract. Subcontractor shall not be entitled to receive any greater amount from Contractor than that which is actually received by Contractor from Owner on account of the Work, less any markups or costs incurred by Contractor. Contractor agrees to present to Owner, in Contractor's name, all of Subcontractor's claims, and shall invoke on behalf of Subcontractor's claims. Contractor shall have the right to control all aspects of such a proceeding including, without limitation, the settlement thereof.

B. All claims, disputes or disagreements relating to either the performance or breach of this Agreement, and which are not subject to the provisions of the Prime Contract, shall be submitted, in the first instance, to Contractor, who shall render a decision thereon. In the event that the Subcontractor disagrees with the decision of Contractor, Subcontractor shall give written notice of such disagreement to Contractor within ten (10) days from the date of Contractor's decision. Thereafter, Subcontractor's sole and exclusive remedy shall be to submit the matter to the American Arbitration Association at its Washington D.C. office, for arbitration according to their applicable rules. Any such proceeding shall be instituted within ninety (90) days from the date of substantial completion of the Project or such claim shall be barred.

C. Subcontractor shall proceed diligently with the Work as directed by Contractor regardless of any disputes, whether or not such disputes are pending determination pursuant to the provision of this Article 14, and Subcontractor's failure to proceed shall be deemed a failure to perform in accordance with the provisions of Article 10 hereof.

Article 15 Approvals and Communications. All communications of any kind required to be made by Subcontractor to Owner under the Prime Contract, including shop drawings submitted for approval, shall be transmitted to Contractor who shall submit same to Owner. All submittals such as shop drawings, catalogs, samples and material as required by the Prime Contract which pertain to the work of this Subcontractor shall be furnished, complete and timely. Subcontractor shall be responsible for delays and indemnify Contractor for any damages incurred because of the failure of Subcontractor or its suppliers or lower tier subcontractors to make such timely and accurate submittals and for any deviations from plans and specifications. All deviations from the Prime Contract documents must be noted clearly on the submittal, and the Subcontractor shall state by separate cover letter the reasons for the deviation and refer to the applicable contract provision. It shall not be the responsibility of Contractor to discover any mistakes, errors, omissions or deviations from Prime Contract requirements, and the approval of any submittals or shop drawings made by Subcontractor shall not relieve Subcontractor from responsibility for unauthorized changes, deviations or omissions or for errors of any sort in its drawings.

Article 16 Owner Approval. If Subcontractor shall be disqualified from performance of this Agreement by Owner for failure to meet minimum qualifications or any other requirements of the Prime Contract, then such disqualification shall be deemed a failure to perform in accordance with the provisions of Article 10. If Subcontractor shall be disqualified from performance of this Agreement by Owner for reasons other than those stated in this Article 16, then this Agreement shall be deemed null and void.

Article 17 Labor. Contractor is an open-shop contractor whose stated policy is to employ responsible and capable subcontractors, regardless of labor policy, to insure the orderly completion of the Work. Subcontractor shall immediately, upon Contractor's request, remove from the Project site any of Subcontractor's labor that, in the opinion of contractor, is in conflict with Contractor's labor policy. Such request shall not in any way change Subcontractor's labor policy under this Agreement. Subcontractor shall be liable in accordance with the provisions of this Agreement (including Article 10) for any strike, picket or labor dispute relating to Subcontractor, any of Subcontractor's employees or Subcontractor's labor policy which delays or in any way hinders the Project.

Article 18 Equal Opportunity. Should the Prime Contract contain any provision prohibiting discrimination on the basis of race, color, religion, sex or national origin, or should any law regulation or order applicable to the Prime Contract or to this Agreement contain any such provision, Subcontractor hereby agrees to comply with such provision, law, regulation or order applicable to the Prime Contract or to this Agreement contain any such provision, Subcontractor hereby agrees to comply with such provision, law, regulation or order.

Article 19 Safety: Compliance with Applicable Laws. Subcontractor shall take complete and effective safety precautions pertaining to the Work and conduct thereof and shall comply with all safety measures required by the Contractor and the Subcontractor's Safety Policy. At its sole expense, Subcontractor shall comply with all applicable laws, ordinances, rules, regulations and orders issued by any public authority, whether Federal, State, Local or otherwise, including, but not limited to, Occupational Safety and Health Administration. Subcontractor shall pay any fines, legal expenses and/or any other costs (either direct or administrative) incurred by Flippo Construction Company, Inc. as a result of a Subcontractors violations of the law, or resulting from its failure to comply with the aforementioned requirements, and shall indemnify, defend and hold harmless Flippo Construction Company, Inc. from any costs, loss, or damage resulting from any safety violation by Subcontractor or breach of any duty under this Article, and withhold such amount from any funds due or become due to Subcontractor.

Article 20 Liens. When requested by Contractor, and as a condition precedent to any payment to be made hereunder, Subcontractor shall furnish to Contractor an affidavit, executed by any party authorized to execute such affidavit for, or on behalf of, Subcontractor, disclosing the names and addresses of, and amounts due, all parties who have supplied materials or labor for Subcontractor's performance of the Work and Subcontractor shall furnish similar affidavits from any and all subcontractors and suppliers of Subcontractor. Contractor reserves the right to ascertain from any such party the correctness of the amount due such party. When requested by Contractor, lien and claim releases shall be provided by Subcontractor to Contractor as a condition precedent to final payment under this Agreement. Should any lien or notice of intention to file a lien, or any petition to establish a lien, at any time be given or filed by any person or entity with respect to work, labor or services rendered, or for materials manufactured or furnished, in connection with the Work, or claimed to have been so rendered, performed, manufactured or furnished, Subcontractor shall promptly (but in any event no later than ten (10) days after such notice is given or any such petition is filed) discharge or remove same by bonding, payment or otherwise and, should Subcontractor fail to remove or discharge any such lien, notice or petition, contractor or Owner may discharge or remove same by bonding, payment or otherwise on behalf of Subcontractor, and if any such lien shall be established, Contractor or Owner may pay to the person or entity entitles thereto such amount as may be necessary to satisfy such lien, together with interest and expenses in the action, as Contractor or Owner shall deem necessary. Any amounts expended by Owner or Contractor pursuant to the foregoing shall be payable by Subcontractor on demand or deducted from the Subcontractor's balance, whichever Owner or Contractor, as applicable, so chooses.

Article 21 Assignment. Subcontractor shall not assign this Agreement or any of Subcontractor's rights or obligations hereunder or subcontract to others any part or all of the Work, except with the prior written consent of Contractor, and no assignment or subcontract made pursuant to the provisions of this Article 21 shall relieve Subcontractor of any obligation hereunder, notwithstanding the fact that Contractor consented to such assignment or subcontract. Any and all assignees or subcontractors of Subcontractor shall be bound by the terms of this Agreement and the Prime Contract, insofar as they relate to the rights and duties of Subcontractor. As a condition precedent to the effectiveness of such assignment or subcontract, such assignee or subcontractor shall agree in writing to be bound by the provisions of this Agreement and the Prime Contract.

Article 22 Independent Contractor. The relationship of Subcontractor to Contractor during the term of this Agreement shall be that of independent contractor, and neither Subcontractor nor any employee or agent thereof shall be deemed an employee or agent of Contractor by virtue of any provision of this Agreement or otherwise. Subcontractor agrees that no person who is an officer, proprietor, partner or principal of Subcontractor shall individually perform any of the Work as a laborer or mechanic.

Article 23 Notices. Any notice, request or other communication required hereunder shall be deemed sufficient if hand delivered with receipt therefor or, if mailed, by registered or certified mail, return receipt requested, to Contractor, at P.O. Box 17226, Alexandria, Virginia, 22302, and to Subcontractor, at the mailing address of Subcontractor specified on Page 1 hereof, or to such other address as either party hereto may designate in writing to the other party by notice in accordance with this Article 23. If mailed, such notice shall be effective upon receipt. Notwithstanding the foregoing provisions of this Article 23, any notice, request or other communication required to be given hereunder to Subcontractor shall be deemed given to Subcontractor if given to Subcontractor's superintendent (as referred to in Article 3 hereof) at the Project with receipt therefor, and any notice, request or other communication required to be given hereunder to Contractor shall be deemed given to Contractor if given to Contractor's authorized representative at the site with receipt therefor.

Article 24 Possession Prior to Completion. Whenever it may be useful or necessary for Contractor to do so, Contractor shall be permitted to occupy and/or use any portion of the Work which has been partially or fully completed by Subcontractor, before final inspection and acceptance thereof by Owner, but such use and/or occupation shall not relieve Subcontractor of Subcontractor's obligation hereunder with respect to the Work nor of Subcontractor's obligation to make good at its own expense any defect in materials and/or workmanship which may occur or develop prior to Contractor's release by Owner of any and all claims under the Prime Contract or relating to the Project.

Article 25 Strict Compliance. Any failure of Contractor at any time to insist upon and require strict compliance with any of the terms and conditions of this Agreement shall not be construed as a waiver or acceptance of that or any subsequent breach or default by Subcontractor nor shall such failure restrict Contractor's right to demand strict compliance with the terms and conditions of this Agreement at any future time.

Article 26 Fees. Subcontractor shall pay all taxes and permit, license and other fees of every nature which may be required by any governmental or other authority upon the labor, material or other things used in the performance of the Work or upon the transaction between Contractor and Subcontractor.

Article 27 Cumulative Rights and Remedies. The rights and remedies of Contractor hereunder shall be cumulative and shall not exclude any other rights or remedies provided to it by law.

Article 28 Benefit and Burden. This Agreement shall be binding upon, and shall be to the benefit of, the parties hereto and their legatees, distributees, pirates, execution, administrator, sureties, personal representatives, other legal representatives, succession and assigns (as limited by Article 21 hereof).

Article 29 Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the place of the project.

Article 30 Headings. The headings in the Agreement are inserted for convenience and reference only and are not to be used in construing or interpreting any of the provisions of this Agreement.

Article 31 Entire Agreement. This Agreement represents the entire agreement between the parties hereto and supersedes any and all prior negotiations, representations or agreements, either written or oral, between the parties. This Agreement may not be amended or modified other than by written agreement between the parties hereto. The validity, unenforceability or unconscionability of any particular provision of this Agreement shall not affect any other provision hereof, and this Agreement shall be construed in all respects as were not contained herein.

5

# EXHIBIT 2

# AEGIS SECURITY INSURANCE COMPANY

2407 PARK DRIVE, SUITE 200, P.O. BOX 3153
HARRISBURG, PA 17110
(717) 657-9671 s FAX (717) 657-5837

Bond # B10 012 202

## SUBCONTRACTOR PERFORMANCE BOND FORM A

KNOW ALL MEN BY THESE PRESENTS: That Omni Excavators, Inc. 4103 48th Street, Bladensburg MD 20710, as Principal,

(insert the name and address, or legal title, of the Subcontractor)

hereinafter called Principal, and AEGIS SECURITY INSURANCE COMPANY, 2407 Park Drive, Suite 200, Harrisburg, PA 17110, as Surety, hereinafter called Surety, are held and firmly bound unto Flippo Construction Company, Inc. 3820 Penn-Belt Place, Forestville, MD 20747

(Here insert the name and address, or legal title of the General Contractor)

as Obligee, hereinafter called Obligee, in the amount of Three Hundred Seventy Nine Thousand, Eighty Three & 90/100

Dollars ($379,083.90), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated the 18th day of January, 2010, entered into a subcontract with Obligee for FCCI Job No. 1030, FCCI Subcontract No. 01, Fort Stanton Sitework and Joint Seals

in accordance with drawings and specifications prepared by _____

(Here insert full name and title)

_____, which subcontractor is by reference made a part hereof, and is hereinafter referred to as the subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:

   (1)  Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;

   (2)  Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;

   (3)  The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract. If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this Bond. If the Surety arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the subcontract or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner as said sums would have been payable to Principal had there been no default under the subcontract. The term "balance of the subcontract price," as used in this paragraph, shall mean the total amount payable by Obligee to Principal under the subcontract and any amendments thereto, less the amounts heretofore properly paid by Obligee under the subcontract.

Any suit under this Bond must be instituted before the expiration of two years from date on which final payment under the subcontract falls due.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Obligee named therein or the heirs, executors, administrators or successors of the Obligee.

Signed, Sealed and Dated this 10th day of March A.D., 2010 .

In the presence of:

Omni Excavators, Inc.

Principal            (Seal)

AEGIS SECURITY INSURANCE COMPANY

Surety            (Seal)

BY: _____

Michael E. Schendel   Attorney-In-Fact

Subcontract Performance Bond Form A.

Power Certificate No. MD 064

# AEGIS SECURITY INSURANCE COMPANY
## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT AEGIS SECURITY INSURANCE COMPANY does hereby make, constitute and appoint: MICHAEL E. SCHENDEL, ANTHONY J. PUNG, DEBRA L. STEWART

its true and lawful Attorney-in-Fact, to make, execute and deliver on its behalf surety bonds, undertaking and other instruments of similar nature as follows: $2.5 MILLION

This Power of Attorney is granted and sealed under and by the authority of the following Resolution adopted by the Board of Directors of the Company on the 4th day of February 1993.

"Resolved, That the President, any Vice President, the Secretary and any Assistant Secretary appointed for that purpose by the officer in charge of surety operations shall each have authority to appoint individuals as Attorney-in-Fact or under other appropriate titles with authority to execute on behalf of the Company, fidelity and surety bonds and other documents of similar character issued by the Company in the course of its business. On any instrument making or evidencing such an appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the Company, the seal or facsimile thereof may by imposed or fixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

"Resolved, That the signature of each of the following officers; President, Vice President, any Assistant Vice President, any Secretary or Assistant Secretary and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any Certificate relating thereto, appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for the purpose only of executing and attesting bonds and undertaking and other writings upon the Company and any such power required and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or undertaking to which it is attached."

IN WITNESS WHEREOF, AEGIS SECURITY INSURANCE COMPANY has caused its official seal to be hereunto affixed; and these presents to be signed by its President this 16th day of September, 2009.

AEGIS SECURITY INSURANCE COMPANY

BY: _____

DARLEEN J. FRITZ
President

Commonwealth of Pennsylvania   }
                               } s.s.: Harrisburg
County of Dauphin              }

On this 16th day of September, 2009, before me personally came Darleen J. Fritz to me known, who being by me duly sworn, did depose and say that she is President of AEGIS SECURITY INSURANCE COMPANY, the corporation described herein and which executed the above instrument; that she knows the seal of the said corporation, that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that she signed her name thereto by like order.

_____

REBECCA LIDDICK
Notary Public
My Commission Expires July 25, 2013

I, the undersigned, Assistant Secretary of AEGIS SECURITY INSURANCE COMPANY, a Pennsylvania corporation, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney, is now in force.

Signed and sealed at the City of Harrisburg, in the Commonwealth of Pennsylvania, dated this 10th day of March, 2010

_____

DEBORAH A. GOOD
Secretary

THIS POWER NULL AND VOID IF NUMBER IS NOT IN RED